UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CR-150 SEP (SRW) |
| | ) | |
| EDWARD NORTH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on Defendant's Motion to Suppress Evidence and Statements Obtained in Violation of his Constitutional Rights (ECF No. 31). All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The undersigned recommends the motion be denied.

I. BACKGROUND

In March 2023, a grand jury indicted Defendant Edward North with one count of possession with the intent to distribute controlled substances, one count of possession of one or more firearms in furtherance of a drug trafficking scheme, and one count of felon in possession of one or more firearms. In November 2023, Defendant filed his Motion to Suppress. The Government filed a response, and the Court set the matter for a hearing. Before the hearing, Defendant sought and obtained subpoenas for various law enforcement witnesses to appear at the hearing.

When defense counsel informed the Government of the witnesses he wanted to call at the hearing, the Government told defense counsel that he would need to comply with the *Touhy*[1]

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

process for any government employees he wished to call as a witness. Defendant then asked the Court to continue the evidentiary hearing and to schedule a hearing to address the Government's response to his subpoenas.

On March 13, 2024, the Court held a hearing on the issue. After hearing arguments from both parties, the Court took the matter under advisement. On March 19, the Court entered an order requiring Defendant to comply with the Department of Justice's *Touhy* regulations if he wanted to call any current or former DEA agents or DEA task force officers at the evidentiary hearing. After the Court's order, Defendant sought and was granted four subpoenas. The Government filed a motion to quash the subpoenas arguing that the testimony of the witnesses would be cumulative, irrelevant, and a fishing expedition. Defendant filed a response and the Court set the matter for a hearing. After hearing arguments, the Court denied the motion to quash.

On May 7, 2024, the parties appeared for an evidentiary hearing. Defendant offered the testimony of Gregory Budt, Kevin Bauer, Jonathan Richards, and Douglas Carr. The Government offered the testimony of Jarrett Neff. The parties filed post-hearing briefs. These matters were fully briefed and submitted on July 2, 2024. The matter is now ready for resolution.

The undersigned has carefully considered the evidence offered and admitted at the evidentiary hearing, including the credibility of the witnesses. The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions. Based upon the evidence adduced at the hearing, the oral arguments made on the record, and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

## II.     FINDINGS OF FACT

On November 14, 2022, Kansas Highway Patrol intercepted a car hauler that was carrying an Infiniti automobile containing approximately 80 pounds of suspected crystal methamphetamine. The drugs were in two duffel bags in the back of the vehicle and were destined for St. Louis. The Kansas Highway Patrol and the DEA office in Fairview Heights, Illinois arranged for a controlled delivery of the drugs on November 16. The task force replaced the drugs with fake drugs and placed trackers in the duffel bags. Agents also obtained precision location information for a cellular device believed to be connected to the intended recipient of the drugs. Agents then conducted pre- and post-delivery surveillance. The controlled delivery occurred at a Love's truck stop. Agents identified the suspects as Zakiyah Keyes, Kenneth Burnett, and Joshua Cosby. Special Agent Gregory Budt, a supervisory special agent with the DEA, was a member of this team.

Agents followed as the drugs were taken to One Cardinal Way, a residential building in the City of St. Louis. Agents arrested Mr. Burnett and Ms. Keyes who were holding the duffel bags while waiting for the elevator in the parking garage of the building. Mr. Burnett had a key fob on him, which an agent gave to SA Budt. Management of the building informed SA Budt that the key fob belonged to Unit 1206. Agents, including Officer Kevin Bauer, an officer with Glen Carbon, Illinois, who was assigned to the DEA office in Fairview Heights, proceeded to the door of Unit 1206, which was in the corner of a tight hallway.

SA Budt, Group Supervisor Rob Eisenbarger, SA Jarrett Neff, a special agent with the DEA, and Officer Bauer knocked on the door. Defendant answered the door and the agents identified themselves as law enforcement. SA Budt was the primary contact with Defendant. Defendant told the agents that he lived in the apartment and no one else was present in the

3

apartment at that time. The agents asked Defendant if he knew Mr. Burnett. He replied that Mr. Burnett was a friend of his who had been staying in the apartment. The agents showed Defendant the Unit's key fob, stated they had obtained the key fob from Mr. Burnett, and asked if the key fob belonged to that apartment. Defendant confirmed that it did. They then asked Defendant if they could search the apartment, to which Defendant replied, "Go ahead." They asked the question again and Defendant again replied, "Go ahead." SA Budt was approximately three feet away from Defendant when he asked Defendant for consent to search.

SA Neff, who was also two to three feet from Defendant, heard the entirety of this conversation including Defendant's consent. Officer Bauer was standing in the hallway, approximately four to five feet away from Defendant, heard this entire conversation and heard Defendant tell the agents to, "go ahead," in response to their request to search the apartment.

When agents entered the apartment to search, Defendant did not resist in any manner and he was cooperative. During the search, SA Budt found a safe in one of the bedrooms and GS Eisenbarger found a shoebox with some money in it. When the agents found these items, Defendant told them that either he did not want them to search any further or he did not give the agents permission to search the residence. Agents interpreted this as a revocation of his consent to search, and they immediately left the apartment. The agents did not open the safe, and they did not seize any evidence at this point. The agents then sought and obtained a search warrant. After obtaining a search warrant, agents completely searched the apartment and found contraband. Defendant was then transported to the DEA office in Fairview Heights. At the DEA office, SA Neff interviewed Defendant. Before doing so, he read Defendant his *Miranda* rights. The interview was recorded.

4

Jonathon Richards is a Special Agent with the DEA. In November 2022, he was a state trooper with the Kansas Highway Patrol and a DEA task force officer. SA Richards was in the hallway when agents made contact with Defendant outside of Unit 1206. He was approximately ten to twenty feet away from the agents who knocked on the door. SA Richards heard the agents talking to Defendant but did not pay attention to what was being said. He did hear the agents ask for consent twice, but he did not hear Defendant's response. At some point, an agent said, "we're good" and SA Richards proceeded, with the other agents, to enter and search the apartment. While in the apartment, SA Richards does not believe Defendant behaved in any way or said anything to indicate he objected to the agents searching the apartment. This was SA Richards's first time working with these agents so he does not know their names to be able to identify who said what.

Douglas Carr is a Lieutenant with the Kansas Highway Patrol and he is a Group Supervisor for the DEA task force. Lieutenant Carr was in the hallway at One Cardinal Way when the agents spoke with Defendant. Lieutenant Carr only knew two of the seven agents or task force officers that were present. Lieutenant Carr stood at the end of the hallway, away from the main group. He paced the hallway and kept checking the elevators to make sure no one came down the hallway. Lieutenant Carr could hear the conversation the agents had with Defendant but did not pay attention to what was being said. At some point, one agent, Lieutenant Carr believes it was SA Neff, said "Okay. We're good. We're going to clear the apartment."

### III.  CONCLUSIONS OF LAW

Defendant asks the Court to suppress evidence obtained from a search of his apartment and statements he made to DEA agents. Defendant argues agents searched his home without a warrant and without consent. Defendant asserts it was not clear that he gave consent to search

5

and even if his responses could be interpreted as consent, they were implicitly coerced by law enforcement. He also argues the search warrant obtained after the initial search was not based on probable cause because the affidavit supporting the search warrant did not establish a sufficient nexus between the drugs found with Mr. Burnett and Defendant's apartment. Defendant asserts the Court must suppress the statements he made to DEA agents after the search as fruit of the poisonous tree.

### A.     Consent to Search

"It is well-settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception to the warrant requirement is a search conducted pursuant to consent. *Id*. To be valid, the consent must be knowing and voluntary, and the Government bears the burden of demonstrating that the person knowingly and voluntarily consented to the search. *United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021). "Consent is voluntary if the consenting individual had a reasonable appreciation of the nature and significance of his actions. The ultimate question is whether the individual's will has been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary." *United States v. Magallon*, 984 F.3d 1263, 1280–81 (8th Cir. 2021) (citations omitted).

When determining whether consent was knowing and voluntary, a court considers the totality of the circumstances, including:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected

6

> criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*Gastelum*, 11 F.4th at 904 (quoting *United States v. Carr*, 895 F.3d 1083, 1089 (8th Cir. 2018)). "[T]here is no bright-line rule to determine when an essentially free and unconstrained choice becomes one that is the result of duress or coercion." *United States v. Harris*, 55 F.4th 575, 581 (8th Cir. 2022) (quoting *United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006)).

The testimony from the evidentiary hearing clearly establishes that Defendant consented to the initial search of his apartment. SA Budt asked Defendant twice if agents could search the apartment and each time he responded, "go ahead." Multiple officers heard Defendant's response. There is no evidence that agents used threats, physical intimidation, or force to coerce consent. There is also no evidence that agents made any promises or misrepresentations to Defendant to get him to consent. Nor was Defendant in custody or under arrest when he was asked for consent. Furthermore, Defendant's behavior while agents entered his apartment and conducted a search did not in any way indicate he objected to the search. The lack of coercion or intimidation by the agents is evident in that Defendant did not hesitate to later revoke his consent when the agents found a safe and currency in his apartment. This also indicates Defendant was aware of his right to refuse consent. The totality of the circumstances indicates that Defendant's consent was knowing and voluntary.

### B. Sufficiency of the Search Warrant

Defendant also challenges the sufficiency of the search warrant that agents obtained after Defendant revoked his consent to search his apartment. Defendant asserts the search warrant does not establish a sufficient nexus between the seized drugs and Defendant's apartment. First,

the Court notes that Defendant did not raise this issue in his motion to suppress. In his motion, Defendant only argued the search of his apartment was in violation of the Fourth Amendment because he did not consent; he did not argue the search warrant was insufficient in some way. Nevertheless, the Court will address Defendant's argument.

"The Fourth Amendment provides that 'no Warrants shall issue, but upon probable cause.'" *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting U.S. Const. Amend. IV). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[O]f course, []there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). "[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827 (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). "The affidavit 'should be examined under a common sense approach and not in a hypertechnical fashion.'" *Id*. (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

The search warrant was issued for One Cardinal Way, Unit 1206. The warrant listed the property to be seized as "All records and information relating violations of Title 21, United States Code Sections 841(a)(1) and 846, that constitutes fruits, evidence and instrumentalities of violations those violations involving BURNETT, NORTH and others known and unknown." It then listed various items to be seized including books, records, telephone bills, electronic devices, photographs, currency, firearms or other weapons, and many other similar items.

8

The affidavit filed in support of the search warrant stated the facts that were introduced during the evidentiary hearing and are summarized above. Agents tracked a vehicle containing drugs to One Cardinal Way. While Mr. Burnett was waiting for the elevators in the parking garage of One Cardinal Way, while holding a duffel bag carrying suspected crystal methamphetamine, agents arrested him and found a blue entry key fob for Unit 1206. All indications were that Mr. Burnett was heading with the drugs to Unit 1206. When agents knocked on the door of Unit 1206, Defendant answered and told agents that Mr. Burnett was staying there. On these facts alone, there is probable cause that evidence of drug trafficking may be found in the apartment where Mr. Burnett was residing and heading towards while carrying 80 pounds of suspected crystal methamphetamine. Thus, the affidavit establishes a sufficient nexus between the contraband and the place to be searched.

Because law enforcement had Defendant's consent to search his apartment initially, and the search warrant to conduct a second search of Defendant's apartment was issued with probable cause, the undersigned recommends Defendant's motion to suppress be denied.

### C.   Suppression of Statements

Defendant's sole argument for suppression of his statements made to DEA agents is that they are fruit of the poisonous tree. Because the Court finds the searches of Defendant's apartment were not in violation of the Fourth Amendment, Defendant's statements to DEA agents after the searches are not fruit of the poisonous tree. For this reason, the undersigned recommends Defendant's motion to suppress his statements be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Edward North's Motion to Suppress Evidence and Statements Obtained in Violation of his Constitutional Rights (ECF No. 31) be **DENIED**.

The parties are advised that they have 14 days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

A trial date will be set by further order of the Court.

So Ordered this 24th day of July, 2024.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**